**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 18-32 |
| | ) | Judge Nora Barry Fischer |
| | ) | |
| DEMETRIUS MITCHELL-YARBROUGH, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.      INTRODUCTION**

Presently before the Court is Defendant Demetrius Mitchell-Yarbrough's motion to modify the conditions of his supervised release (Docket No. 284), his brief in support thereto (Docket No. 285), the Government's response in opposition (Docket No. 294), Defendant's reply (Docket No. 298), and the Government's sur-reply (Docket No. 300). Defendant requests that the Court grant him "permission to take . . . medical marijuana pursuant to Pennsylvania's medical marijuana laws" while on supervised release. (Docket No. 284 at 1). The Government opposes Defendant's motion arguing that "granting it would permit him to violate federal law . . . with impunity." (Docket No. 294 at 1). After careful consideration of the parties' submissions and for the following reasons, Defendant's motion [284] is denied.[1]

---

[1] The Court denies Defendant's motion without a hearing because he has no right to a hearing and his arguments fail as a matter of law. *See United States v. Byfield*, 391 F.3d 277, 279 (D.C. Cir. 2004) ("The district court denied [Defendant]'s requests for a modification and for a hearing . . . [and] [w]e review the court's decision not to conduct a hearing for an abuse of discretion."). Accordingly, the Court exercises its discretion to rule without a hearing given the record before it. Moreover, defense counsel did not request a hearing, and the Court was clear at the sentencing hearing that it would hold a hearing only if necessary after reviewing the parties' briefing. (*See* Docket No. 284 at 10 (requesting only that the "Court review []his motion and brief in support"); *see also* Docket No. 281 at 56 ("So I'll request some additional time, file an appropriate motion

## II.      FACTUAL BACKGROUND

On February 6, 2018, a federal grand jury returned a five-count indictment against Defendant. (Docket No. 3). Specifically, Defendant was charged with the following: conspiracy to possess with intent to distribute and distribute quantities of cyclopropyl fentanyl, acetyl fentanyl and fentanyl, in violation of 21 U.S.C. § 846 (Count One); possession with intent to distribute a quantity of cyclopropyl fentanyl and a quantity of acetyl fentanyl and fentanyl, both in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts Two and Three); possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Four); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Five), all for conduct occurring on or about July 28, 2017. (*Id.*). Defendant was ordered to be temporarily detained, and the Court ordered, upon the parties' joint motion, that his competency be evaluated because "there [was] reasonable cause to believe that the defendant may [have] be[en] suffering from a mental disease or defect rendering him mentally incompetent." (*See* Docket No. 34; *see also* Docket No. 33). After receiving the evaluations of Dr. Martone and Dr. Wettstein, who both opined in written reports that Defendant was cognitively impaired but able to understand the nature and consequences of the proceedings against him, the Court held a competency hearing on June 3, 2019 and found by a preponderance of the evidence that Defendant was competent. (*See* Docket No. 103; *see also* Docket No. 111).

On July 12, 2019, Defendant pled not guilty to the charges and was ordered detained pending a trial. (*See* Docket Nos. 114-15; 121-22).  The Court appointed Defendant counsel, and his counsel, recognizing his intellectual disability, requested additional neuropsychological

---

with exhibits, and we can schedule a hearing *if appropriate* at a later date and time.") (emphasis added); *Id.* at 59 ("And then if I need [i]t, I'll have either an argument or a hearing[.]")).

testing, which the Court ordered on April 9, 2020. (*See* Docket No. 190). Defendant was to be examined by Dr. James Petrick, however, he was unable to complete his examination given COVID-19 restrictions at the Allegheny County Jail. (*See* Docket No. 199). Accordingly, on May 29, 2020, the Court ordered that Defendant be released from pretrial custody, so that he could complete the additional testing. (*See* Docket No. 202).

Defendant was placed on pretrial release on June 2, 2020, subject to numerous conditions including that he "refrain from use or unlawful possession of a narcotic drug or other controlled substances . . . unless prescribed by a licensed medical practitioner." (*See id.* at 7; *see also* Docket No. 203). On June 17, 2020, Dr. Petrick conducted a neuropsychological examination of Defendant and opined that he has mild to moderate cognitive deficit most likely related to neurodevelopmental factors. (*See* Docket No. 268 at 12 ¶ 55). Five days later, on June 22, 2020, Defendant inquired with his Probation Officer as to whether he was permitted to "smoke marijuana while on temporary release . . . [and] whether he would be permitted to obtain a medical marijuana card." (*See* Docket No. 211 at n.1). The Court issued an order on July 1, 2020, in which it reminded Defendant "that he must steer clear of . . . marijuana and any other controlled substances if he wishe[d] to remain in compliance with the conditions imposed upon him and continue on temporary release." (*See id.*). However, because "Defendant denied any illegal use of controlled substances[,]" the Court permitted him to remain on pretrial release. (*See generally id.*). On November 16, 2020, the Court held a change of plea hearing, where Defendant withdrew his not guilty plea and pled guilty to Counts One through Three of the Indictment, and the Court continued his bond and conditions of release pending sentencing. (*See* Docket Nos. 251-52).

Shortly after his change of plea hearing, while on pretrial release and awaiting sentencing,

Defendant conducted a brief tele-health consult with Dr. Roxanne Rick[2] of the Green Bridge Society for the purposes of obtaining medical marijuana under Pennsylvania's Medical Marijuana Program. (*See* Docket No. 289-1). As part of his consultation, Defendant completed a self-assessment titled a "Hamilton Anxiety Assessment."[3] Defendant also completed a one-page questionnaire, wherein he stated that he "get[s] anxious every time [he is] around a lot of people." (*See id.* at 7). After the consultation, Dr. Rick diagnosed Defendant with a severe anxiety disorder and "recommended that he obtain a medical marijuana card." (*See id.* at 2; *see also id.* at 3-6). There is no indication in the evidence presented to the Court that Dr. Rick reviewed any of Defendant's medical records, current or prior prescription medications, his substance abuse history, nor the reports on his cognitive functioning which were prepared for this case. On December 7, 2020, Defendant was issued a medical marijuana identification card. (*See* Docket No. 285 at 13).

After obtaining his medical marijuana card, Defendant began "vap[ing] his medical marijuana . . . to control his anxiety." (*See* Docket No. 285 at 13). Meanwhile, in preparation for

---

[2] Dr. Rick is currently licensed to practice medicine and issue prescriptions in Pennsylvania and is registered with the Pennsylvania Department of Health's Medical Marijuana Program. (*See* Docket No. 294 at 2). However, her license was suspended for ten years in October 2003 following a conviction in this Court for conspiring to distribute and possess with the intent to distribute oxycodone, benzphetamine, and hydrocodone, and distributing and possessing with intent to distribute methadone and benzphetamine. (*See* Docket No. 294-1). As a result of a plea agreement, Dr. Rick received a sentence of 57 months' imprisonment, and "[t]he parties agreed [that] . . . Rick[ had] abuse[d] . . . her position." *See United States v. Rick*, Crim. No. 00-184, Docket No. 52 (W.D. Pa. May 6, 2002); *see also United States v. Rick*, 67 F. App'x 105, 106 (3d Cir. 2003)).

[3] Dr. Rick describes the Hamilton Anxiety Assessment as a "clinical tool [that] is used to measure the severity of a patient's anxiety in addition to co-existing somatic factors." (Docket No. 289-1 at 2). Practically, the assessment includes self-selecting the severity of various stress factors from a scale of 0 (least severe) to 4 (most severe). (*See id.* at 8-11). The factors include: Anxious Mood; Tension; Fears; Insomnia; Intellectual; Depressed Mood; Muscular; Sensory; Cardiovascular Symptoms; Respiratory; Gastrointestinal; Urinary; and Autonomic. (*See id.*). Defendant selected either a 3 or 4 for each factor. (*See id.*).

Defendant's sentencing, the Probation Office conducted a Presentence Investigation Report ("PIR"). (*See* Docket No. 268). In the PIR, Defendant disclosed to the Probation Office that "he [had] recently received a medical marijuana card and provided a copy of his card as verification." (*See id.* at 11 ¶ 50). Defendant also reported to Probation that he had a history of substance abuse, as "he began smoking marijuana at age 13, and it became a 5-blunt per day habit until he was 24 years old." (*See id.* at 12 ¶ 57). Defendant stated that he last smoked marijuana in 2017. (*See id.*). Notably, the PIR does not mention Defendant having an anxiety disorder. (*See generally id.*). Instead, the PIR summarizes the three professional reports as to Defendant's competence, none of which mention an anxiety order, and discusses mental health outpatient treatment that Defendant has been participating in since August 2020. (*See id.* at 12 ¶¶ 52-56).

On April 15, 2021, the Court held a sentencing hearing and sentenced Defendant concurrently to time served on Counts One through Three based upon his 26 months in pretrial detention. (*See* Docket No. 280). The Court also sentenced Defendant to 3 years' supervised release with specific conditions of release. (*See id.*). The first three mandatory conditions of Defendant's release, which were read to the Defendant on the record, were as follows:

> 1. You must not commit another federal, state or local crime.
> 2. You must not unlawfully possess a controlled substance.
> 3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

(*See id.* at 4; *see also* Docket No. 281 at 33-34). Moreover, within the additional conditions of Defendant's release, the Court ordered the following:

> 1.  The defendant shall not illegally possess a controlled substance.
> . . .
> 5.  The defendant shall participate in a mental health assessment and/or treatment program approved by the probation officer, until such time as the defendant is released from the program by the Court.

(*See* Docket No. 280 at 6).

After the Court imposed its sentence, it addressed the medical marijuana issue. (*See* Docket No. 281 at 47). The Court noted that "in Pennsylvania you can use medical marijuana," however, "federal law is that marijuana is still illegal." (*See id.* at 50-51). Additionally, the Court noted that all that it had in front of it was Defendant's medical marijuana card, and therefore it "need[ed] more of an evidentiary record" to rule on the issue. (*See id.*). Specifically, the Court posed the following questions: "[H]ow did he get this medical marijuana card? Who is the provider? Who's the practitioner? Is it a legit dispensary? What kind of marijuana is he using? Is he chewing it? Is he smoking it? Is he vaping it? How often does he use it, et cetera, et cetera?" (*See id.* at 52). All told, the Court opined that it did not "have enough to make an informed decision." (*See id.* at 54).

Meanwhile, Defendant's counsel stated that he would file a motion to modify Defendant's conditions of release and "equate[d] a prescription for Zoloft, Xanax or any other psychotropic drug the same as a prescription for a medical marijuana card." (*See id.*). The Government countered that, "while [Defendant is] under the supervision of the Federal Government through the auspices of the United States Probation Office and the Court, that he should not be permitted to violate the law, federal law, even if his actions would be licit under state law." (*See id.* at 58). The Court responded that it was "not going to condone . . . authorize . . . [or] order that [Defendant] be permitted to use medical marijuana." (*See id.* at 62). However, the Court also stated that "if it appears that [Defendant] is using marijuana in an appropriate way under the licensed doctor, then [it was] not going to necessarily sanction him."[4] (*See id.* at 63). Since his sentencing, while the

---

[4] In stating that the Court would not necessarily sanction Defendant, the Court was clear that it would not do so while the issue was pending, i.e. until it ruled on Defendant's motion. (*See* Docket No. 281 at 59-63 (stating that "in the meantime, Mr. Mitchell-Yarbrough, you know, I'm going to ask you not to use your medical marijuana until I make a ruling," but also clarifying that in the interim "if it appears that he is using marijuana in an appropriate way under the licensed doctor,

Probation Office has "continue[d] to work with Mr. Mitchell-Yarbrough to understand the difference between the laws in both systems and also to utilize his mental health treatment provider to determine other courses of treatment that may be beneficial for him, while keeping him in compliance with the terms of his supervised release," Defendant has tested positive for cannabinoids three times. (*See* Docket Nos. 290-91; 296-97).

On May 21, 2021, Defendant filed a motion and brief in support to modify the conditions of his supervised relief to permit him to use medical marijuana. (*See* Docket Nos. 284-85). In support of his motion, Defendant attached a testimonial by Ron Boyles, Jr. of the Green Bridge Society, as well as a letter from Dr. Rick. (*See* Docket No. 285-1; *see also* Docket No. 289). The Government responded in opposition of Defendant's motion on July 13, 2021. (*See* Docket No. 294). Defendant replied on July 21, 2021, and the Government submitted its sur-reply on August 4, 2021. (Docket No. 298; Docket No. 300). As such, the Court considers Defendant's motion fully briefed and ripe for disposition.

## III.    APPLICABLE LAW

A federal court "may after considering the factors set forth in [§] 3553(a) . . . modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release." 18 U.S.C. § 3583(e)(2). However, "[t]he Court cannot, and will not, sanction the violation of federal law by a defendant on . . . release, even if

---

then I'm not going to necessarily sanction him."). To the extent that the parties disagree, "[t]his Court has the inherent authority to interpret its own orders." *See Myers v. AutoZoners, LLC*, 2019 WL 480467, at *1 (W.D. Pa. Feb. 7, 2019) (citing *United States v. Spallone*, 399 F.3d 415, 421 (2d Cir. 2005); *see also SEC v. Hermil, Inc.*, 838 F.2d 1151, 1153 (11th Cir. 1988) ("Included in a district court's power to administer its decrees is the power to construe and interpret the language of the original order."); *E.E.O.C. v. U.S. Steel Corp.*, 877 F. Supp. 2d 278, 282 (W.D. Pa. 2012); *Myers v. AutoZoners, LLC*, No. CV 16-1312, 2017 WL 6316586, at *10 (W.D. Pa. Dec. 11, 2017) (citing *In re Asbestos Prod. Liab. Litig. (No. VI)*, 718 F.3d 236, 243-45 (3d Cir. 2013) (a district court has discretion to interpret its own orders)).

state law and the weight of public opinion appear to contradict that federal law." *See United States v. Pearlman*, 2017 WL 7732811, at *8 (D. Conn. July 7, 2017); *see also United States v. Cannon*, Crim. No. 21-33, Docket No. 36 at 7 (W.D. Pa. May 18, 2021) (Schwab, J.); *see generally United States v. Schostag*, 895 F.3d 1025, 1027 (8th Cir. 2018) (stating that "[a]lthough district courts 'may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release,' 18 U.S.C. § 3583(e)(2), courts *cannot* amend conditions to contradict federal law") (emphasis added)). To that end, Defendant's request for permission to possess and use medical marijuana pursuant to Pennsylvania's medical marijuana laws while on supervised release calls for the Court to modify a statutorily mandated condition of his release in order to permit Defendant to engage in conduct that violates federal law. Because, in this Court's estimation, it cannot grant Defendant's request, and for all of the following reasons, the Court will deny Defendant's motion.

### A. Federal Law

Congress has provided that "[t]he court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision . . . and that the defendant not unlawfully possess a controlled substance." *See* 18 U.S.C. § 3583(d).[5] The statutory penalty for violating that mandatory condition is the mandatory revocation of the Defendant's supervised release. *Id.* § 3583(g) (calling for mandatory revocation "[i]f the defendant possess[es] a controlled substance in violation of the condition set forth in subsection (d)"). In regard to federal crimes, when Congress enacted the Controlled

---

[5] Congress applied the same mandatory condition to pretrial release under the Bail Reform Act, thereby doubling down on its intention that Defendants on release shall not be committing further crimes. *See* 18 U.S.C. § 3142(b) (stating that a "judicial officer shall order the pretrial release of the person . . . subject to the condition that the person not commit a Federal, State, or local crime during the period of release"); *see also id.* § 3142(c)(1)(A) (same).

Substances Act in 1970 to combat the "war on drugs," it "classified marijuana as a Schedule I drug," thereby criminalizing its possession under federal law. *See* 21 U.S.C. § 812(c) (listing marijuana as a Schedule I drug with " no currently accepted medical use in treatment in the United States"); *Id.* § 844(a) (criminalizing possession of controlled substances); *see also Gonzales v. Raich*, 545 U.S. 1, 14 (2005) ("By classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, the manufacture, distribution, or possession of marijuana became a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration preapproved research study."); *Briscoe v. Att'y Gen.*, 751 F. App'x 329, 331 n.1 (3d Cir. 2018). Since that time, "[d]espite a wave of marijuana legalization at the state level," federal law has remained consistent and " the Supreme Court has held federal law's treatment of marijuana is clear: marijuana is contraband for *any* purpose; in fact, by characterizing marijuana as a Schedule I drug, Congress expressly found that the drug has no acceptable medical uses." *United States v. Bey*, 341 F. Supp.3d 528, 530 (E.D. Pa. 2018) (quoting *Raich*, 545 U.S. at 27) (internal quotation marks and alteration omitted) (emphasis in original)); *see also United States v. Woodhull*, 2021 WL 1375520, at *2 (W.D. Pa. Apr. 12, 2021) (Colville, J.) ("It is undisputed that the possession of marijuana remains illegal under federal law.") (citing 21 U.S.C. § 844(a)). Therefore, federal law leaves no room for an exception for medical marijuana. *See id.* ("The Controlled Substances Act contains no exception—express or implied—for medically-prescribed marijuana."); *see also United States v. Perla*, 2021 WL 461881, at *3 (W.D. Pa. Feb. 9, 2021) (Hardy, J.) ("Notably, the federal statute does not make any exception for medical marijuana.").

### B.  Pennsylvania Law

In 2016, the Pennsylvania General Assembly enacted the Medical Marijuana Act ("MMA") recognizing that "[s]cientific evidence suggests that medical marijuana is one potential

therapy that may mitigate suffering in some patients and also enhance quality of life" and permitting the "use or possession of medical marijuana as set forth in th[e] act [a]s lawful within th[e] Commonwealth." *See* 35 Pa. Stat. and Cons. Stat. §§ 10231.102(1); 10231.303(a); *see also Gass v. 52nd Judicial Dist.*, 232 A.3d 706, 707-08 (Pa. 2020). As set forth in the MMA, the use of marijuana in various forms is lawful in Pennsylvania so long as it is dispensed to "(i) a patient who receives a certification from a practitioner and is in possession of a valid identification card issued by the department; [or] (ii) a caregiver who is in possession of a valid identification card issued by the department." *See* 35 Pa. Stat. Ann. and Cons. Stat. § 10231.303(b)(1). Thus, to be issued a medical marijuana identification card, the "patient" must first obtain a certificate from a registered practitioner under the MMA. *See id.*

"[I]n order for a practitioner to issue a certification, both the practitioner and the patient must meet certain criteria." *See United States v. Scott*, Crim. No. 13-14, Docket No. 59 at 3 (W.D. Pa. May 14, 2021) (Schwab, J.). As stated above, the practitioner must be registered within the MMA's registry, which requires a "determin[ation] that the physician is, by training or experience, qualified to treat a serious medical condition" and the successful completion of a training course. *See* 35 Pa. Stat. Ann. and Cons. Stat. § 10231.401(a). On the other hand, a "patient" as defined by the act is "[a]n individual who has a serious medical condition, has met the requirements of certification . . . and is a resident of th[e] Commonwealth." *See id.* § 10231.103. A patient has a "serious medical condition" if he suffers from any of seventeen enumerated conditions or any "[o]ther conditions that are recommended by the advisory board and approved by the secretary,"[6] and he may only be issued a certification if "the practitioner determines the patient is likely to

---

[6] On July 20, 2019, "anxiety disorders" were added to the list of qualifying medical conditions under the MMA. *See* 49 Pa.B. 3821, Pa.B. Doc. No. 19-1106 (Jul. 20, 2019).

receive therapeutic or palliative benefit from the use of medical marijuana." *See id.* §§ 10231.103; 10231.403(a)(4).

## IV.     DISCUSSION

Given the above-stated principles, while possession of marijuana remains illegal under federal law, certain qualifying individuals may possess and use medical marijuana legally under Pennsylvania law. Understandably, "Pennsylvania's permission may confuse some Pennsylvanians as to their ability to use marijuana of any type for any reason under federal law." *See Bey*, 341 F. Supp. 3d at 528. However, when considering the interplay between the two statutes, the law is clear: "The Supreme Court's interpretation of the Controlled Substances Act compels we conclude [Defendant] may not use medical marijuana under federal law[;] [a] Pennsylvania statute or policy to the contrary cannot override a conflicting federal statute, as the Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail." *See id.* at 531 (quoting *Raich*, 545 U.S. at 29) (internal quotation marks and alterations omitted)). Moreover, the only Circuit Court to address a District Court's authority to permit a Defendant to use medical marijuana while on supervised release has concluded that a "district court ha[s] no discretion to allow [a defendant] to use medical marijuana while on supervised release." *See Schostag*, 895 F.3d at 1028. Thus, after reviewing the parties' arguments and in light of the relevant standards, in this Court's estimation, the Court cannot grant Defendant's request. *See id*; *see also United States v. Jackson*, 388 F. Supp. 3d 505, 510 (E.D. Pa. 2019) ("A district court has no discretion to allow a supervisee to use medical marijuana while on supervised release, as to do otherwise would defy federal law." (internal quotation marks, alterations, and citation omitted)). Accordingly, Defendant's motion must be denied.

### A.  Overview of Arguments

Under the applicable law, the Government's position is straightforward, i.e. that Defendant's motion "must be denied, because granting it would permit him to violate federal law—which is prohibited as a mandatory condition of his release—with impunity." (*See* Docket No. 294). Defendant retorts that he is entitled to possess and use medical marijuana under Pennsylvania law, and he implores the Court to modify the conditions of his supervised release to permit the same under federal law. (*See generally* Docket Nos. 284-85). In support of that position, Defendant raises five equitable arguments as to why the Court should grant him relief: (1) that medical marijuana is generally effective and at least "partially responsible for the progress" Defendant has made with his mental health; (2) Pennsylvania has permitted the use of medical marijuana and the Commonwealth "heavily regulates" it; (3) the Federal Government has a "paradoxical stance" towards medical marijuana; (4) the Consolidated Appropriations Act rider "prohibits the Department of Justice from enjoining Pennsylvania medical cannabis use;" and (5) other federal Courts have permitted medical cannabis use. (*See generally* Docket No. 285).

### B. Analysis

In this Court's estimation, Defendant's arguments are unavailing. At his sentencing, the Court imposed the statutorily mandated conditions of supervised release, including that he: (1) not commit another Federal, State, or local crime; (2) not unlawfully possess a controlled substance; and (3) refrain from any unlawful use of a controlled substance. (*See* Docket No. 280); *see also* 18 U.S.C. § 3583(d). The Court has thoroughly considered the relevant standards and believes that there is no doubt that "federal law preempts Pennsylvania's limited permission to use and possess doctor-prescribed medical marijuana[;] [p]ersons released from prison subject to this Court's supervised release—as with all Pennsylvanians—may not use, possess or distribute marijuana under federal law." *See Bey*, 341 F. Supp. 3d at 529. The Court will address each of Defendant's

arguments to the contrary, in turn.

Initially, Defendant submits two exhibits in support of his claim that medical marijuana is effective. First, Defendant submits a testimonial of Ron Boyles, Jr., a former opioid addict who began using marijuana, which drastically improved his health, and who now owns and operates the Green Bridge Society. (*See* Docket No. 285-1). Second, he points to Dr. Rick's May 30, 2021 letter stating that "[t]he therapeutic utility in this patient is without question[;] [t]he advantages of using medical marijuana to treat Demetrius's social anxiety is that it will allow him to microdose as needed and obviate the need for a daily pharmaceutical." (*See* Docket No. 289 at 2). He also argues that the conditions that prevent him from using medical marijuana while on supervised release contradict the additional condition that he "participate in a mental health assessment and/or treatment program." (*See* Docket No. 285 at 2-3).

While Mr. Boyles's testimonial is representative of how marijuana has positively affected and continues to affect him personally, his testimonial statement makes no reference of the affect that it has on Defendant. Additionally, although Dr. Rick, an employee of Mr. Boyles at the Green Bridge Society, opines that the "therapeutic utility" of medical marijuana in Defendant's case is "without question," her letter does not state that she has reviewed his medical records, including the detailed reports created as to Defendant's competency in this case, and it makes no reference to the impact on Defendant's cognitive impairment.[7] (*See* Docket No. 289 at 2). To that end,

---

[7] While Dr. Rick is currently licensed to practice medicine, write prescriptions, and is registered with the Pennsylvania Department of Health's Medical Marijuana Program, her prior 10-year suspension for "abuse of her position" is certainly relevant given the "one-time, arms-length determination" made here that Defendant would benefit from medical marijuana. *See Rick*, 67 F. App'x at 106; *see also* (Docket No. 294 at 5). Moreover, given the record before the Court and its role as gatekeeper, Dr Rick's opinion is not in line with *Daubert* and its progeny. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) (outlining the standard for the admission of expert scientific, technical, or specialized testimony under Fed. R. Evid. 702); *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80 (3d Cir. 2017) ("Pursuant to [*Daubert*], district courts perform a

defense counsel has previously requested additional neuropsychological testing of Defendant and has "acknowledge[d] that Mr. Mitchell-Yarbrough has special needs" and "known cognitive deficits and disabilities." (*See* Docket No. 285 at 1, 23). Those assertions are consistent with the three expert reports in this case. For instance, Dr. Martone opined that "defendant suffers from an unspecified intellectual disability" and that he "has compromised intellectual functioning." (*See* Docket No. 268 at 12 ¶ 53). Dr. Wettsetin agreed and opined that "defendant has a mental disease or defect in the form of an intellectual disability of unspecified severity." (*See id.* at ¶ 54). Finally, Dr. Petrick, who assessed Defendant just a few months prior to his assessment with Dr. Rick, opined that "defendant has mild to moderate cognitive deficit most likely related to neurodevelopmental factors" and that he "demonstrated borderline to mildly impaired intellectual capacity." (*See id.* at ¶ 55).

There is no evidence that Dr. Rick was aware of or accounted for Defendant's cognitive deficiencies or his prior marijuana addiction when determining that medical marijuana was an appropriate treatment for his anxiety disorder – a disorder that was not diagnosed by any of his prior treating physicians. Also, notably, there is no evidence that Dr. Rick, who was dealing with a cognitively impaired individual with a history of abusing marijuana, explained to or counseled Defendant on how much or how to properly use medical marijuana to treat his anxiety disorder.

---

gatekeeping function to ensure that expert testimony meets the requirements of Federal Rule of Evidence 702."); *FTC v. Innovative Designs, Inc.*, 2020 WL 758727, at *9-16 (W.D. Pa. Feb. 14, 2020) (granting Defendant's motion to strike expert testimony where, in performing the Court's gatekeeping function, it found the testimony "d[id] not meet the standard for reliability, under *Daubert* and its progeny"); Fed. R. Evid. 702; *see also United States v. Bahena*, 223 F.3d 797, 808 (8th Cir. 2000) ("*Daubert* does apply to criminal cases . . . [because it] is the standard that the Supreme Court has given for testing the admissibility of scientific evidence under Fed.R.Evid. 702[, and] [t]he Federal Rules of Evidence apply in both civil and criminal cases.") (internal citations omitted)); *United States v. Mills*, 2019 WL 2464782, at *1 (W.D. Pa. June 13, 2019) (applying "all [the] requirements of Rule 702 and *Daubert*" to the admissibility of expert opinion evidence in a criminal case).

Moreover, as the Government points out, it would seem that the Hamilton Anxiety Assessment – where Defendant "subjectively answer[d] 13 questions on a scale of 0 to 4 . . . [–] [wa]s the only diagnostic tool used to support the [her] determination." (*See* Docket No. 294 at 2). And to the extent that Defendant asserts that the conditions of his release are contradictory, the additional condition states that he "shall participate in a mental health assessment and/or treatment program *approved by the probation officer*." (*See* Docket No. 280 at 6 (emphasis added)). Defendant's conditions of supervised release do not require that he participate in the treatment program of his choice, and the Probation Office has not approved Defendant's medical marijuana treatment program. Rather, Defendant was already participating in mental health outpatient treatment in the form of monthly counseling session since August 2020.

Defendant next cites Pennsylvania's regulation of the medical marijuana industry under the MMA as a justification for his motion. While the MMA requires that an individual have a serious medical condition and meet the certification requirements to obtain a medical marijuana identification card, the Commonwealth requires little more by way of oversight *after* obtaining same. *See* 35 Pa. Const. Stat. Ann. § 10231.103. In that regard, Defendant admits that neither "[t]he state, the doctor, [n]or the dispensary . . . control how much, how often, or what strain" of medical marijuana he uses. (*See* Docket No. 285 at 13). As referenced above, there is no evidence that Defendant's certifying physician, Dr. Rick, has counseled Defendant on how to properly use medical marijuana to treat his anxiety disorder. Defendant submits that he "vapes his medical marijuana," but he has demonstrated that since obtaining his identification card, he has used two different 500 mg vape cartridges, one from Standard Farms and one from ILERA, and 3.5 grams of flower by Kind Farms. (*See id.* at 10-13). Although Pennsylvania may "heavily regulate[]" the pre-medical marijuana identification card process, since Defendant was issued his card, he has

unfettered discretion when it comes to "how much, how often, or what strain" he uses. (*See id.* at 13). That discretion is especially problematic given his addictive "5-blunt per day" history with marijuana, his legal trouble with marijuana in the past, and his cognitive deficiencies.

To the extent that Defendant points out a "paradoxical stance" by the Government towards marijuana as a basis for modifying the conditions of his release, the Court agrees with the Government that "[t]he solution he seeks is truly a matter of legislation, not of judicial permission." (*See* Docket no. 294 at 5). The United States Constitution vests the power to enact, and relevant here, to amend, the laws of the United States with Congress. *See* U.S. CONST. art. I, § 1 ("All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives."). On the other hand, the Constitution vests the judicial power with the Courts, whereby "[C]ourts interpret a law as enacted by the legislature and do not annex new provisions or substitute different ones, or read into a statute exceptions, limitations or conditions which depart from its plain meaning." *See id.* art. III, § 1; *see also* 2A *Sutherland Statutory Construction* § 46:4 (7th ed.) (Nov. 2020 update); *see generally United States v. Oakland Cannabis Buyers' Co-op*, 532 U.S. 483, 497 (2001) (holding that "a court sitting in equity cannot ignore the judgment of Congress, deliberately expressed in legislation" in finding that no implied medical necessity exception existed to the prohibitions on manufacturing and distribution of marijuana established by Controlled Substances Act) (internal quotation marks and citation omitted)). As the Government maintains, Defendant's policy arguments as to the federal decriminalization of marijuana "are better suited to the floors of our congressional chambers" because "[i]t is undisputed that the possession of marijuana remains illegal under federal law." *See Woodhull*, 2021 WL 1375520, at *2; *see also infra* at 7-8.

Defendant next posits that the Consolidated Appropriations Act Rider of 2020 "prohibits

DOJ from using funds to prevent Pennsylvania from implementing its own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." (*See* Docket No. 285 at 29 (citing Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, December 20, 2019, 133 Stat 2317 (2020) (internal quotation marks and alteration omitted)). However, this argument fails for two separate but equally compelling reasons. First, nothing in the Rider permits Federal Courts to authorize violations of federal law. Section 531 of the Rider states that "[n]one of the funds made available under th[e] Act to the Department of Justice may be used, with respect to any of the States of . . . Pennsylvania . . . to prevent any of them from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." *See id.* at 2431. Yet, the Rider neither impacts Federal Courts, which operate independently of the Department of Justice, nor authorizes them to modify statutorily mandated conditions of supervised release.[8] Second, this claim is "premature given the particular circumstances of this case." *See Perla*, 2021 WL 461881, at *4 & n.2 (finding Defendant's Appropriations Rider argument premature where "there [wa]s no pending petition charging that Defendant has violated any condition of his pretrial release" and "Defendant's compliance with the MMA [wa]s not before the Court"). To date, Federal Courts addressing this issue have distinguished between cases where a Defendant moves to modify the conditions of his supervised release, as is the case here, and cases where Defendants

---

[8] *See, e.g.*, *United States v. Nixon*, 839 F.3d 885, 886-87 (9th Cir. 2016) (*per curiam*) (holding that a prior Appropriations Act Rider with identical language did not "impact[] the ability of a federal district court to restrict the use of medical marijuana as a condition of probation"); *Schostag*, 895 F.3d at 1028 (stating that "[a]lthough district courts "may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release," 18 U.S.C. § 3583(e)(2), courts *cannot* amend conditions to contradict federal law") (emphasis added)); *United States v. Jackson*, 388 F. Supp. 3d 505, 513 (E.D. Pa. 2019) ("[A] *federal court* [is] an entity that is not funded by the DOJ and therefore not covered by the rider.") (emphasis in original) (citation omitted)); *Sandusky v. Herrera*, 2020 WL 2129212, at *4 (D. Colo. May 5, 2020) ("The appropriations rider, by its plain language, does not apply to the federal courts.").

have invoked the Rider as a means for preventing the DOJ from expending funds to prosecute federal marijuana violations that otherwise comply with state law. *Compare id.*, *with Jackson*, 388 F. Supp. 3d at 513 (holding "that the appropriations rider prohibits DOJ from using its funds to prosecute a violation of supervised release based on state law-compliant use of marijuana" where the "defendant d[id] not ask the Court to modify the terms of his supervised release but argue[d] only that DOJ cannot use its funds to prosecute any violation premised on his state law-compliant use of medical marijuana"). Thus, Defendant's Appropriations Rider argument becomes relevant only if or when the Probation Office petitions to violate Defendant under the terms of his release and the Government attempts to prosecute said petition.[9]

Finally, Defendant argues that this Court should modify the conditions of his release to permit his use of medical marijuana under state law because "[o]ther Federal Judges have allowed defendants under federal supervision to use medical marijuana." (*See* Docket No. 285 at 31). In support of that assertion, Defendant cites numerous cases, some of which are decisions from this

---

[9] To date, the Probation Office has filed two reports noting Defendant's three positive drug tests for cannabinoids, but has not petitioned to revoke his release, instead opting "to continue to work with Mr. Mitchell-Yarbrough to understand the difference between the laws in both systems and also to utilize his mental health treatment provider to determine other courses of treatment that may be beneficial for him, while keeping him in compliance with the terms of his supervised release." (*See* Docket Nos. 290-91; 296-97). Meanwhile, nothing in the Appropriations Rider prevents the Probation Office's continued supervision of Defendant or prevents the Court from finding Defendant in violation of the terms of his supervised release. *See Sandusky*, 2020 WL 2129212, at *4 (holding that because "[t]he Probation Office, or more formally, the 'Administrative Office of the United States Courts, Probation and Pretrial Services,' is . . . an 'arm of the court' [rather than] . . . 'a component of the Department of Justice[,]' . . . the expenditure of funds by the Probation Office in connection with [Defendant]'s term of supervised release does not violate the appropriations rider"); *see also United States v. Johnson*, 228 F. Supp. 3d 57, 62 (D.D.C. 2017) ("Wherever the outer limits of [a prior Appropriation Rider's] prohibition lie, though, its bar on the Justice Department's actions does not foreclose a response by this Court to the Probation Office's Petition."); 18 U.S.C. § 3583(g) (calling for the *mandatory* revocation of Defendant's supervised release by the Court "[i]f the defendant possesses a controlled substance in violation of the [*mandatory*] condition set forth" within the statutory scheme) (emphasis added)).

District. (*See id.* at 31-33). The Court recognizes that several of her learned colleagues have reached differing conclusions on how to manage Defendants using medical marijuana on supervised release, however, there has been general uniformity in regard to one issue: the Court cannot and will not modify the mandatory conditions of a Defendant's pretrial release to permit him to violate federal law by using medical marijuana.[10] Indeed, none of the Judges have explicitly authorized the use of medical marijuana by modifying a Defendant's conditions; rather, they have exercised their discretion and declined to sanction a defendant for a violation of the conditions of release.[11]

---

[10] *See, e.g.*, *United States v. Crim*, Crim. No. 15-114, Docket No. 48 at 6 (W.D. Pa. June 2, 2021) (Schwab, J.) ("[T]he Court concludes that federal law prohibits Defendant from using marijuana – medical marijuana or otherwise [while on supervised release]."); *United States v. Scott*, Crim. No. 13-14, Docket No. 59 at 5 (W.D. Pa. May 14, 2021) (Schwab, J.) (same); *United States v. Cannon*, Crim. No. 21-33, Docket No. 36 at 7 (W.D. Pa. May 18, 2021) (Schwab, J.) ("[T]his Court cannot, and will not, grant Defendant permission to violate federal law by modifying the terms of Defendant's pre-trial release to allow him to use medical marijuana in compliance with Pennsylvania's MMA."); *Perla*, 2021 WL 461881, at *4 ("Possession of marijuana remains illegal under federal law, and Defendant's compliance with federal law is a mandatory condition of his pretrial release. Accordingly, Defendant's request that the Court modify the condition of release which requires that he must not violate federal, state or local law to allow his use of medical marijuana will be denied."); *but see United States v. Pawlowski*, Crim. No. 09-209, Docket No. 122 at 1 (W.D. Pa. Apr. 14, 2021) (Ambrose, J.) (granting Defendant's motion to modify conditions of supervised release to permit use of medical marijuana so long as it is "used in accordance and [in] compliance with Pennsylvania law and . . . not . . . connected to any unlawful activity or violations of conditions of supervised release").

[11] *See, e.g.*, *United States v. Kane*, Crim. No. 18-322, Docket No. 124 at 1-2 (W.D. Pa. July 6, 2021) (Ranjan, J.) ("[T]he Court is unable to modify [Defendant]'s probation conditions to permit her to use medical marijuana . . . [however,] the Court will not be inclined to find [Defendant]'s use and possession of medical marijuana, consistent with Pennsylvania's Medical Marijuana Act of 2016, to be a sufficient violation of her probation conditions so as to warrant, by itself, the revocation of probation or modification of the conditions."); *United States v. Stopperich*, Crim. No. 20-347, Docket No. 516 at 1-2 (W.D. Pa. May 17, 2021) (Ranjan, J.) (same); *United States v. Brunson*, Crim. No. 20-347, Docket No. 477 at 1-2 (W.D. Pa. Mar. 18, 2021) (same for conditions of pretrial release); *United States v. Hooper*, Crim. No. 19-142, Docket No. 64 (W.D. Pa. Aug. 6, 2020) (Bissoon, J.) ("The Court will not modify the Order Setting Conditions of Release, but shall permit Defendant to use medical marijuana at this time provided that she fully complies with all Pennsylvania state regulatory requirements and the conditions set forth by the Probation Office[.]"); *United States v. Martin*, Crim. No. 09-98, Docket No. 133 at 1-2 (W.D. Pa. Apr. 24,

This Federal Judge, however, has remained consistent in not permitting Defendants to use medical marijuana while on supervised release.[12] For much of the same reasons in those cases as well as for the reasons stated above, the Court maintains that same stance here. To that end, Defendant has known cognitive deficits and disabilities that date back to his high school days. (*See* Docket No. 268 at 13 ¶ 61 ("The results of [an academic] evaluation found that the defendant's general ability was within the intellectually deficient range of cognitive functioning.")). Additionally, Defendant is serving his current term of supervised release for a drug conviction, albeit not marijuana, and has previously possessed and used marijuana unlawfully and has reported a history of substance abuse since "he began smoking marijuana at age 13, and it became a 5-blunt per day habit until he was 24 years old." (*See id.* at 12 ¶ 57); *see also United States v. Scott*, Crim. No. 13-14, Docket No. 59 at 6 (W.D. Pa. May 14, 2021) (Schwab, J.) ("[T]he Court deems it both imprudent and illegal (under federal law), to permit Defendant to use medical marijuana, given his most recent and his past substance abuse history."); *United States v. Crim*, Crim. No. 15-114, Docket No. 48 at 6 (W.D. Pa. June 2, 2021) (Schwab, J.) (same); *Woodhull*, 2021 WL 1375520, at *3 ("It is inadvisable, however, to permit her to use medical marijuana, in violation of federal law, given her previous substance abuse history and substance abuse treatment history."); *United*

---

2019) (Cercone, J.) ("The court declines to prohibit or sanction the reported conduct even though use of marijuana is a technical violation of supervision because possessing it remains a violation of federal law.").

[12] *See United States v. Anderson*, Crim. No. 12-200, Docket No. 547 at 1-2 (W.D. Pa. Feb. 26, 2020) (Fischer, J.) (denying Defendant's motion "seek[ing] a modification of his conditions of supervised release to authorize his use of medical marijuana . . . [finding it] to be inadvisable given his previously reported substance abuse history, including his unlawful use of marijuana starting at the age of 11 which he previously advocated required the need for further substance abuse treatment"); *Unites States v. Viccari*, Crim. No. 14-102, Docket No. 58 (W.D. Pa. Feb. 18, 2020) (Fischer, J.) (denying motion to modify conditions and amending the judgment to include the condition that "[t]he defendant shall not use medical marijuana and shall surrender any medical marijuana to the Probation Officer").

*States v. Anderson*, Crim. No. 12-200, Docket No. 547 at 1-2 (W.D. Pa. Feb. 26, 2020) (Fischer, J.) (holding Defendant's request to use medical marijuana was "inadvisable given his previously reported substance abuse history, including his unlawful use of marijuana starting at the age of 11 which he previously advocated required the need for further substance abuse treatment"). Despite his prior trouble with marijuana, after being placed on pretrial release and being "reminded that he must steer clear of . . . marijuana and any other controlled substances if he wishe[d] to remain in compliance with the conditions imposed upon him and continue on temporary release," Defendant sought and obtained a medical marijuana card. (*See* Docket No. 211 at n.1; *see also* Docket No. 285 at 13). He was issued said card after completing an anxiety self-assessment and sitting through a "one-time, arms-length" tele-health consult. (*See* Docket No. 289). Since obtaining his medical marijuana card, neither "[t]he state, the doctor, [n]or the dispensary [have been] control[ling] how much, how often, or what strain [he] is using." (*See* Docket No. 285 at 13). Following his sentencing, despite the Probation Office's efforts to work with Defendant "to understand the difference between the laws in both systems and also to utilize his mental health treatment provider to determine other courses of treatment that may be beneficial for him, while keeping him in compliance with the terms of his supervised release," he has tested positive for cannabinoids three times. (*See* Docket Nos. 290-91; 296-97). Accordingly, the concerns articulated by the Court at sentencing that medical marijuana may be hurting his mental functioning more than helping him remain unanswered. (*See* Docket No. 281 at 54). To the extent that the former is true, the Court is further concerned that medical marijuana may negatively affect the positive strides that Defendant had been making, namely, working two jobs and living a law-abiding lifestyle.[13] As such, the Court

---

[13] At his sentencing hearing, the Court applauded Defendant for the growth that he had made and took it into account when sentencing him to time served. (*See* Docket No. 281 at 42-43 ("And very pleasing to the Court, you have gotten not one, but two jobs, and you have been on the straight and

finds it inadvisable, imprudent, and illegal to permit Defendant to use medical marijuana while on supervised release. Therefore, the Court will deny Defendant's motion and all the conditions of his supervised release set forth in the Court's April 15, 2021 judgment (Docket No. 280) shall remain in effect.

## V.    CONCLUSION

For all of these reasons,

IT IS HEREBY ORDERED that Defendant's motion [284] is denied; and,

---

narrow. So that's all good."). While Defendant "submits that continue[d] use of medical marijuana is his choice and is partially responsible for the progress he has made in life," the Court is cognizant that the use of medical marijuana could negatively impact that progress, especially given his cognitive deficiencies and the lack of oversight in his use of it. (*See* Docket No. 285 at 15). For instance, although the MMA "specifically prohibits any employer from discharging, threatening, or refusing to hire or discriminating or retaliating against an employee 'solely on the basis of such employee's status as an individual who is certified to use medical marijuana,'" it "in no way limit[s] an employer's ability to discipline an employee for being under the influence of medical marijuana in the workplace or for working while under the influence of medical marijuana when the employee's conduct falls below the standard of care normally accepted for that position." *See Palmiter v. Commonwealth Health Sys., Inc.*, -- A.3d -- , 2021 WL 3507795, at *5 (Pa. Super. Ct. Aug. 10, 2021)* ("[I]n the employment context, § 2103(b) of the MMA not only delineates the rights afforded employees who are certified users, but also sets forth the rights of employers to discipline employees who are in violation of the terms of certified use.") (citing 35 Pa. Stat. and Cons. Stat. § 10231.2103(b)). Thus, Defendant may suffer an adverse employment action if he is "under the influence of medical marijuana in the workplace." *See* 35 Pa. Stat. and Cons. Stat. § 10231.2103(b); *see also James v. City of Costa Mesa*, 700 F.3d 394, 405 (9th Cir. 2012) ("We hold that doctor-recommended marijuana use permitted by state law, but prohibited by federal law, is an illegal use of drugs for purposes of the ADA, and that the plaintiffs' federally proscribed medical marijuana use therefore brings them within the ADA's illegal drug exclusion."); *Bailey v. Real Time Staffing Servs.*, 543 F. App'x 520, 524 (6th Cir. 2013) (rejecting a claim for discriminatory discharge brought under the ADA by an employee who was fired for testing positive for marijuana); *Parrotta v. PECO Energy Co.*, 363 F. Supp. 3d 577, 590-600 (E.D. Pa. 2019) (denying former employee's claims of retaliation and discrimination under the ADA where he was terminated for self-medicating with marijuana for a foot injury); *Eccleston v. City of Waterbury*, 2021 WL 1090754, at *5 (D. Conn. Mar. 22, 2021) ("District courts in other circuits have similarly concluded that the ADA provides no protection against discrimination on the basis of medical marijuana use, even where that use is state-authorized and physician-supervised[,] . . . [and] Courts have additionally rejected the argument that discrimination on the basis of medical marijuana use reflects discrimination on the basis of the disability the medical marijuana is used to treat.") (citations omitted)).

IT IS FURTHER ORDERED that the Judgment entered on April 15, 2021 [280] is amended to include the following additional condition:

9. Defendant shall not use medical marijuana and shall surrender

any medical marijuana and his medical marijuana identification card

to the Probation Officer within fourteen (14) days of this Order. The

Probation Office may destroy same upon receipt.

An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Dated:  August 24, 2021

cc/ecf:  All counsel of record